UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

ANTHERS CAGE,                          )
                                       )
                    Plaintiff,         )
                                       )
v.                                     )          Case No. 1:12CV87 SNLJ
                                       )
MULTIBAND, INC.,                       )
                                       )
                    Defendant.         )

## MEMORANDUM AND ORDER

This matter is before the Court on defendant's motion for summary judgment.

Plaintiff has not filed a response and the time for doing so has expired.  The motion is

ripe for disposition.  For the following reasons, the Court will grant the motion.

## I.      Background

Plaintiff Anthers Cage was a cable installer for defendant Multiband, Inc. from

July 2007 to February 2010.  Plaintiff filed this multi-count action against Multiband

alleging claims of race discrimination and retaliatory discharge under Title VII of the

Civil Rights Act, failure to pay overtime and retaliatory discharge under the Fair Labor

Standards Act (FLSA), and wrongful discharge in violation of public policy.

In accordance with this Court's Case Management Order, on August 29, 2014,

defendant filed its motion for summary judgment.  On September 19, 2014, plaintiff's

counsel filed a motion for leave to withdraw indicating a strained relationship between

plaintiff and counsel such that counsel could no longer represent plaintiff and that

plaintiff had advised counsel that he intended to seek new counsel.  At the same time,

plaintiff's counsel filed a request for an extension of plaintiff's deadline to respond to defendant's motion for summary judgment. The Court granted the motion to withdraw and entered an Order extending plaintiff's response deadline to October 20, 2014.

On November 17, 2014, the Court *sua sponte* issued an Order providing notice to plaintiff that if he did not respond to the motion for summary judgment within twenty-one days it would be taken up as an unopposed motion. On December 12, 2014, plaintiff requested an additional thirty to sixty days to obtain counsel. Plaintiff's request failed to state any reason why he had been unable to obtain counsel or why he needed additional time to obtain counsel. Defendant opposed the motion. The Court denied the motion finding plaintiff had been given sufficient time to obtain new counsel following the withdrawal of counsel. Plaintiff did not file a response to the motion for summary judgment.

## II.    Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56(a), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The burden is on the moving party. *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op. Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party bears the burden of setting forth affirmative evidence and specific

facts by affidavit and other evidence showing that there is a genuine dispute of a material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Celotex*, 477 U.S. at 324.

The movant's statement of facts are deemed admitted if not specifically controverted by the opposing party. E.D. Mo. L.R. 4.01 (E). Even where all of movant's facts are deemed admitted, the Court must look at the entire record to determine whether summary judgment is warranted. "The Eighth Circuit has determined that when a plaintiff fails to respond adequately to a motion for summary judgment, a district court should not treat such a non-response as sufficient to dispose of the motion." *Lowry v. Powerscreen USB, Inc.*, 72 F.Supp.2d 1061, 1064 (E.D. Mo. 1999) (citing *Canada v. Union Electric Co.*, 135 F.3d 1211, 1213 (8th Cir. 1997). "Courts should proceed to examine those portions of the record properly before them and decide for themselves whether the motion is well taken." *Id.* "In so ruling, even on an unopposed motion for summary judgment, the court should review the facts in a light most favorable to the party who would be opposing the motion." *Id.*

## III.   Facts

Plaintiff failed to specifically controvert defendant's statement of facts and, therefore, those facts are deemed admitted for this motion. *O'Connell v. Accurate Plumbing, LLC*, 4:04CV1368 FRB, 2005 WL 2176926, at *2 (E.D. Mo. Sept. 8, 2005) (citing *Northwest Bank & Trust Co. v. First Ill. Nat'l Bank*, 354 F.3d 721, 724-25 (8th Cir. 2003); *Harris v. Interstate Brands Corp.*, 348 F.3d 761, 762-63 (8th Cir. 2003)). The undisputed facts, as supported by the record, are set forth below.

Multiband, via its subsidiaries, maintains DIRECTV's installations, service, and upgrades for residential and commercial digital media services. Multiband maintains office locations throughout the United States, including an office in Paducah, Kentucky. Among many other types of workers, Multiband employs technicians to install, repair, and upgrade equipment for its customers.

Cage was employed as a technician for Multiband in the Paducah location from July 19, 2007 to February 12, 2010. During all times relevant to the amended complaint, certain Multiband technicians, including plaintiff, were represented by the Communication Workers of America (the "Union"). A Collective Bargaining Agreement (CBA) between the Union and Multiband was in effect at all times relevant to this case. Cage was subject to the CBA beginning in 2008.

Pursuant to the terms of the CBA, Multiband technicians, including Cage, are classified as "job based" employees and compensated at a piece rate, receiving a certain amount for each piece of work they perform. Cage agrees the piece rate is meant to incorporate payment for all the work performed for each job. In addition to the piece rate, job based technicians received an overtime premium of time and one-half. Multiband calculates that premium by taking the weekly gross compensation for a job based technician, including production work only, and dividing by the hours worked in the week to determine a rate per hour. The hourly rate is then divided by two to determine one half of the hourly rate. One half of the hourly rate is then multiplied by the hours worked, in excess of forty, to determine the amount of the overtime premium. Cage agrees Multiband calculated and paid him overtime in the manner described.

At all times relevant to this lawsuit, Multiband maintained a set of written employment policies. Cage signed a Receipt and Acknowledgement for the Policy Manual on July 26, 2007. Multiband maintains a written policy that job based technicians are expected to arrange their schedule, have meals, and take breaks in a manner that will allow them to complete their work in no more than forty hours per week. Multiband's written policy requires employees to obtain advance written approval before working overtime.

Multiband provided Cage with a vehicle to use while traveling to customer work sites. Cage executed a Vehicle Assignment Agreement when he received the vehicle from Multiband. Cage did not have to obtain any special licenses to drive his Multiband vehicle and parked the vehicle in his driveway. Multiband has a written policy that the time a technician spends traveling to each customer site to perform work is counted as compensable work time. Multiband has a written policy indicating that employees who believe there is an error in their pay should contact the corporate payroll office immediately. Cage alleges he complained to a supervisor and various Union members about not receiving compensation for his commute to work each day. However, Cage did not report to Multiband, as hours worked or as overtime, the time it took him to drive from his home to the first job of the day.

At the time he was hired, Cage knew he was assigned to work in the Southeast Missouri region and that he would be required to travel throughout Missouri. At the time he was hired, Cage knew Multiband required him to attend weekly technician meetings. Multiband maintains a written policy that employees are responsible for accurately

recording and reporting all time worked.  If Cage reported to Multiband his attendance at a weekly technician meeting, Multiband compensated him for his attendance.  Cage alleges he reported his attendance at weekly technician meetings about half the time.  Cage never complained to anyone at Multiband about having to attend to weekly technician meetings.

Cage claims he kept handwritten notes on scraps of paper each week indicating the hours over forty he worked for Multiband, but did not provide those notes to Multiband.  In determining how many hours he worked over forty each week for the purposes of this lawsuit, Cage included the time each day, "from when I woke up in the morning [to] when I done my last job […]."  To calculate how many hours he worked each day for the purposes of this lawsuit, Cage looked at each work order and assigned a particular amount of time based on the average it generally took him to perform that task.  For instance, it generally took him an hour to an hour and a half to install a standard dish.

Cage alleges he made verbal complaints to "Sally" in Multiband's Human Resources Department about his pay.  In particular, with regard to his complaint, Cage alleges, "I told her she might want to take a look at my check stub, because my computation shows totally different than what the company is showing, and I told her that my overtime hours weren't correctly paid in full."  In response to his verbal complaints, Cage received a response that Multiband was compensating him properly.  Cage also alleges he made general verbal complaints to supervisors with Multiband that his overtime was calculated improperly.

On June 12, 2013, Cage's counsel sent a letter outlining the basis for Cage's overtime claim. On March 19, 2014, Multiband's counsel responded in a letter to Cage's counsel indicating that the overtime compensation calculation provided in the CBA is expressly permitted by the Fair Labor Standards Act. In particular, defendant's counsel stated, "according to your letter, Cage believes Multiband miscalculated his overtime and paid him only half time, instead of time-and-one-half. Multiband has audited Cage's payroll records and finds that he was actually overcompensated. Cage was paid a job-based rate for all of the hours he worked each week, including hours exceeding forty. This would be the 'time' in a 'time and one-half' evaluation. Multiband then takes the average of an employee's weekly compensation, divides it in half, and applies it to each hour of overtime each week. This is the "and one-half" in a 'time and one-half' evaluation. This method is proper under the Fair Labor Standards Act. Cage was properly compensated for all overtime he reported." Cage's counsel responded by letter, admitting that the provision of the CBA setting forth Multiband's method of calculating overtime for job based employees complies with the Fair Labor Standards Act.

Multiband has a written policy stating that excessive absence or lateness is cause for disciplinary action, up to and including termination. Multiband has a written discipline policy that indicates it may terminate an employee at any time for more serious disciplinary offenses, but that the company generally follows a progressive discipline plan which includes the following steps: oral reminder, written warning, suspension, and termination. Multiband issued disciplinary actions to Cage on seven occasions prior to the disciplinary action that resulted in his termination. Each written disciplinary notice

Cage received contained the statement, "employee is aware that if this problem persists it will result in additional disciplinary action up to and including dismissal."

Multiband provided Cage with more verbal and written warnings than were required by the company discipline policy before Cage's eventual suspension and termination. Multiband issued Cage a verbal warning for tardiness on February 24, 2009. Multiband issued Cage a verbal warning for failure to attend a required inventory meeting on February 27, 2009. Multiband issued Cage a verbal warning for failure to attend a required technician meeting on March 12, 2009. Multiband issued Cage a written warning for failure to attend a required technician meeting on April 22, 2009. Multiband issued Cage a verbal warning for failing to perform duties in a satisfactory manner on June 24, 2009. Multiband issued Cage a three-day suspension for failure to attend a required technician meeting on November 20, 2009 and for showing up later that afternoon in his company vehicle wearing jeans, t-shirt, and tennis shoes rather than his uniform. On February 5, 2010, Multiband issued Cage a verbal warning for failure to enter his hours of work into the company's timekeeping system for a period of three weeks in violation of company policy. Cage sometimes made general complaints to his coworkers and union steward about receiving discipline, but did not file a grievance or complaint with Multiband after he was disciplined.

Multiband terminated Cage's employment for failure to attend a required technician meeting on February 12, 2010, which was his eighth disciplinary action within a one year period. On February 22, 2010, the union filed a grievance on Cage's behalf contesting Cage's termination. The union's grievance does not allege Multiband

discriminated against Cage in discipline or termination, or that Cage's termination was retaliatory.  On February 24, 2010, the union requested documentation regarding Cage's disciplinary history and the reason for his termination.  Multiband denied Cage's grievance and provided all of the documentation the union requested.  Under the CBA, Multiband employees, including Cage, have four grievance steps available including arbitration at step four.  The union did not appeal Multiband's step one denial of the grievance regarding Cage's termination.

On April 5, 2010, Cage filed a charge of discrimination with the Missouri Commission on Human Rights, alleging discrimination on the basis of race and retaliation.  On November 8, 2011, the Missouri Commission on Human Rights issued a finding of no reasonable cause with regard to Cage's claims.  Cage filed this lawsuit on December 26, 2011.

For his Title VII race discrimination claim, plaintiff alleges that race was a motivating factor in his termination and he was subject to disparate treatment compared with Caucasian technicians who failed to attend technician meetings.  In his deposition, plaintiff testified that defendant treated Caucasian employees more favorably when those employees failed to attend weekly technician meetings.  He had identified those employees as Mike Magarian, Ronnie Moore, and an employee named "Chris" in his interrogatory responses, but at his deposition testified only that Magarian and Moore missed technician meetings and were not disciplined.  However, within approximately the same one year time period during which Multiband issued Cage eight disciplinary memorandums, the company issued Magarian four disciplinary memorandums, including

three for performance issues and one for failure to attend a weekly technician meeting. Multiband disciplined Moore for failure to attend technician meetings on January 22, 2010 and February 19, 2010. Cage also testified Multiband treated Moore differently than Cage because Moore crashed his company vehicle and the incident "went unnoticed." In fact, Multiband terminated Moore's employment for driving while intoxicated and causing damage to his vehicle.

For his Title VII retaliation claim, plaintiff contends he was terminated due to his complaint of an alleged discriminatory comment made to him by a supervisor, Andrew Wilkins. Cage alleges Wilkins made the following alleged discriminatory statement to him: "Boy, you ain't done until I say you're done." That statement is the only alleged discriminatory statement that Cage alleges was made to him by any employee of Multiband. Cage claims Wilkins made the statement to him in July 2009, after Cage finished work early, went home, and refused to accept a job assignment from Wilkins because Cage was already home for the day. The day after Wilkins made the statement, Cage alleges he told Kevin Corbett, a manager at Multiband, that he felt Wilkins made a "derogatory" statement to him. Multiband has written policies prohibiting harassment, discrimination, and retaliation. The company also maintains a policy providing employees with specific instructions on filing a complaint about discrimination or harassment. Cage did not file a complaint with Multiband, pursuant to Multiband policy or otherwise, alleging he experienced discrimination.

## IV.    Discussion

### 1.    Title VII - Race Discrimination

Plaintiff alleges a claim under Title VII that defendant discriminated against him based on his race in terminating his employment. He claims that race was a motiving factor in the decision to discipline him and terminate his employment for failure to attend technician meetings. Further, he alleges that he was subject to disparate treatment compared with Caucasian technicians who failed to attend technician meetings.[1]

For a claim of discrimination brought under Title VII to survive a motion for summary judgment, plaintiff must present direct evidence of unlawful discrimination or create an inference of unlawful discrimination under the burden-shifting framework established in *McDonnell Douglas Corp v. Green*, 411 U.S. 792 (1973). *Gibson v. American Greetings Corp*., 670 F.3d 844, 853 (8th Cir. 2012). "To prove intentional discrimination through direct proof, a plaintiff must establish 'a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the employer's decision.'" *Id.* (quoting *Putman v. Unity Health Sys.,* 348 F.3d 732, 735 (8th Cir. 2003)).

Under the burden-shifting framework, plaintiff must first establish a prima facie case of discrimination. *Jackson v. United Parcel Serv., Inc.,* 643 F.3d 1081, 1086 (8th Cir. 2011). To establish a prima facie case for race discrimination, plaintiff must show that (1) he is a member of a protected class, (2) he met his employer's (defendant's) legitimate expectations, (3) he suffered an adverse employment action, and (4) "the

---

[1] Cage also alleged in his complaint that his installer position was filled by a Caucasian employee but testified at his deposition that he has no idea who filled his position or the race of that individual.

circumstances give rise to an inference of discrimination (for example, similarly situated employees outside the protected class were treated differently)." *Gibson*, 670 F.3d at 854 (quoting *Lake v. Yellow Transp., Inc.,* 596 F.3d 871, 874 (8th Cir. 2010)). "A prima facie case creates a rebuttable presumption of discrimination." *Pye v. Nu Aire, Inc.*, 641 F.3d 1011, 1019 (8th Cir. 2011). The burden then shifts to the defendant to prove a legitimate, nondiscriminatory reason for its action. *Id.* If defendant establishes such a reason, the presumption disappears, and the burden shifts back to the plaintiff to prove that defendant's proffered reason is a pretext for unlawful discrimination. *Id.*

Plaintiff has not presented any direct evidence of racial discrimination. Therefore, this Court will analyze plaintiff's claim under the *McDonnell Douglas* burden-shifting framework. Defendant argues that plaintiff's claim fails because he was not meeting the legitimate expectations of his employer, the circumstances do not give rise to an inference of discrimination, and there was a legitimate, nondiscriminatory reason for terminating plaintiff's employment.

Assuming, without deciding, that plaintiff could establish a prima facie case for race discrimination, defendant has established a legitimate, nondiscriminatory reason for its decision to terminate plaintiff's employment. The undisputed facts show that plaintiff violated defendant's policies and received eight disciplinary actions in the one year period prior to his termination. The termination was in accordance with defendant's written policy regarding progressive discipline. In fact, defendant gave plaintiff more verbal and written warnings than necessary under the policy before his termination.

Because defendant has articulated a legitimate, nondiscriminatory reason for terminating plaintiff's employment, the presumption of discrimination disappears requiring plaintiff to prove that the proffered reason is a pretext for discrimination. "The plaintiff has the burden of persuasion at all times." *Bone v. G4S Youth Services, LLC*, 686 F.3d 948, 955 (8th Cir. 2012). "A reason cannot be proved to be a pretext for discrimination unless it is shown both that the reason was false and that discrimination was the real reason." *Bone v. G4S Youth Services, LLC*, 686 F.3d 948, 955 (8th Cir. 2012) (internal quotations omitted).

In his complaint, plaintiff alleged disparate treatment. To establish that defendant's reason is a pretext for unlawful discrimination based on disparate treatment, plaintiff must pass the "rigorous test" to show that he and more favorably treated employees were "similarly situated in all relevant respects." *Evance v. Trumann Health Services, LLC*, 719 F.3d 673, 678 (8th Cir. 2013). "The individuals used for comparison must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances." *Id.*

During his deposition, plaintiff testified that he believed he was disciplined when Caucasian employees were not. Specifically, he testified that Caucasian employees Mike Magarian and Ronnie Moore failed to attend technician meetings and received no discipline from Multiband. Plaintiff provided no more information than that vague allegation and his belief that he was treated differently than them. Plaintiff also testified

that Moore was not disciplined following a driving while intoxicated accident in a company vehicle.

Plaintiff has not submitted any evidence in support of his allegations that Magarian and Moore failed to attend technician meetings and received no discipline from defendant. Plaintiff's allegations are vague and unsubstantiated. Further, plaintiff has not submitted any evidence in support of his allegation that Moore was not disciplined following a driving while intoxicated accident in a company vehicle. Instead, the undisputed evidence before the Court on this motion disproves plaintiff's allegations. The evidence shows that, during the same one year period of time, Magarian received four disciplinary actions including three for performance issues and one for failure to attend a weekly technician meeting. And, the evidence shows that Moore was disciplined twice for failure to attend technician meetings and was terminated for driving while intoxicated and causing damage to his company vehicle. Plaintiff has not met his burden to show disparate treatment. Because defendant has shown a legitimate, nondiscriminatory reason for terminating plaintiff's employment, and plaintiff has failed to show that reason was a pretext for discrimination, defendant is entitled to judgment as a matter of law on this claim.

### 2. Title VII - Retaliation

Plaintiff alleges a claim under Title VII that defendant retaliated against him by terminating his employment after he complained of racial discrimination by a supervisor. In his complaint, plaintiff, who is African American, alleges that a Caucasian supervisor made a discriminatory comment to him. Specifically, plaintiff claims a supervisor,

Andrew Wilkins, said to him "[b]oy, you ain't done until I say you're done." Plaintiff alleges Wilkins made this statement to him after he finished work early, went home, and refused to accept a job assignment from Wilkins because he was already home for the day. Plaintiff alleges he complained to another supervisor about the comment.

As with a discrimination claim, to survive a motion for summary judgment, plaintiff must present direct evidence of retaliation or create an inference of retaliation under the burden-shifting framework established in *McDonnell Douglas*. *Pye v. Nu Aire, Inc.*, 641 F.3d 1011, 1020 (8th Cir. 2011). "Direct evidence of retaliation is evidence that demonstrates a specific link between a materially adverse action and the protected conduct, sufficient to support a finding by a reasonable fact finder that the harmful adverse action was in retaliation for the protected conduct." *Id.* (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)).

Title VII makes it unlawful for an employer to discriminate against an employee because the employee "has opposed any practice made an unlawful employment practice [by Title VII] . . . or . . . has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing [under Title VII]." 42 U.S.C. § 2000e-3(a). "The two clauses of this section typically are described, respectively, as the opposition clause and the participation clause." *Barker v. Missouri Dept. of Corrections*, 513 F.3d 831, 834 (8th Cir. 2008). Plaintiffs claim is viewed under the opposition clause, "which shields an employee against discrimination because he has opposed a practice made unlawful by Title VII." *Id.*

To establish a prima facie case of unlawful retaliation, plaintiff must establish that (1) he engaged in protected conduct, including opposition to an action prohibited by Title VII; (2) his employer took an adverse action against him; and (3) the adverse action was causally linked to the protected conduct. *Tyler v. University of Arkansas Bd. of Trustees*, 628 F.3d 980, 985 (8th Cir. 2011). *Marzec v. Marsh*, 990 F.2d 393, 396 (8th Cir. 1993). "In terms of the causal connection, the plaintiff must show that the protected conduct was a 'determinative – not merely motivating – factor in the employer's adverse employment decision.'" *Tyler v. University of Arkansas Bd. of Trustees*, 628 F.3d 980, 985 (8th Cir. 2011) (quoting *Van Horn v. Best Buy Stores, L.P.*, 526 F.3d 1144, 1148 (8th Cir. 2008)). "If an employee establishes a prima facie case of retaliation, the burden shifts to the employer to articulate a legitimate, non-retaliatory reason for its action; if the employer does so, the burden shifts back to the employee to put forth evidence of pretext, the ultimate question being whether a prohibited reason, rather than the proffered reason, actually motivated the employer's action." *Pye v. Nu Aire, Inc.*, 641 F.3d 1011, 1021 (2011) (quoting *Fercello*, 612 F.3d at 1077-78).

As with his race discrimination claim, plaintiff has not presented any direct evidence of discriminatory treatment based on retaliation. As a result, his claim of retaliation is also analyzed under the *McDonnell Douglas* burden-shifting framework. Defendant argues that plaintiff's retaliation claim fails because he was not engaging in a protected activity, the evidence does not establish a causal relationship between his complaint and his discharge, and there was a legitimate, non-retaliatory reason for terminating plaintiff's employment.

Assuming, without deciding, that plaintiff could establish a prima facie case for retaliation, defendant has established a legitimate, non-retaliatory reason for its decisions to terminate plaintiff's employment. Again, the undisputed facts show that plaintiff violated defendant's policies and received eight disciplinary actions in the one year period prior to his termination. The termination was in accordance with defendant's written policy regarding progressive discipline. Plaintiff has not produced any evidence that defendant's proffered reason is a pretext for unlawful discrimination. As a result, plaintiff's claim fails and defendant is entitled to judgment as a matter of law.

### 3.    FLSA Failure to Pay Overtime

In his complaint, plaintiff alleges that he "routinely worked in excess of forty hours per week without proper compensation." Based on his deposition testimony, plaintiff's overtime claim includes two categories: 1) plaintiff's disagreement with defendant's method of calculating overtime; and 2) overtime compensation plaintiff claims but did not report to defendant while he was employed including time spent commuting to work, attending technician meetings, and general overtime recorded on scraps of paper.

Under section 7 of the FLSA, an employer may not subject non-exempt employees to a work week in excess of forty hours unless the employee is compensated for overtime with pay of at least one and one half times the regular hourly wage. 29 U.S.C. § 207. An employer who violates this restriction "shall be liable to the employee or employees affected in the amount of their . . . unpaid overtime compensation . . . and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b).

Plaintiff disagrees with defendant's method of calculating overtime wages and believes it to be unlawful. However, plaintiff has not specified how or why the calculation is unlawful. Plaintiff admits that defendant calculated and paid him overtime in accordance with the collective bargaining agreement. Further, during the pendency of this action, plaintiff's counsel sent a letter to defendant's counsel admitting that the overtime calculation set forth in the collective bargaining agreement is in accordance with the FLSA. Plaintiff has not offered any evidence to support his claim. Instead, the undisputed evidence before this Court is that plaintiff was properly compensated for all overtime he reported.

Additionally, plaintiff claims he is owed overtime pay for hours he now claims for commute time, attending technician meetings, and general overtime he alleges he kept track of on scraps of paper but did not submit for payment to defendant while employed. "An employee must be compensated for duties before and after scheduled hours . . . if the employer knows or has reason to believe the employee is continuing to work and the duties are an integral and indispensable part of the employee's principal work activity." *Hertz v. Woodbury County, Iowa*, 566 F.3d 775, 781 (8th Cir. 2009) (internal citations and quotations omitted). Thus, in order to prevail on his overtime claims, plaintiff is required to present evidence that he worked above his scheduled hours without compensation and that the defendant knew or should have known that he was working overtime. *Id.* Further, "[t]he FLSA's standard for constructive knowledge in the overtime context is whether the [employer] 'should have known, not whether it could have known." *Id.* at 782.

Plaintiff has not offered any evidence to support his claim that he is owed overtime wages for time spent commuting to work. According to plaintiff's deposition testimony, he did not ever make a written request to be paid for his drive from home to his first job of each day. Further, plaintiff's claim that he was not paid overtime wages for attending technician meetings fails because he admitted that he was properly compensated for his attendance at meetings when he reported the time as hours worked. Plaintiff's vague allegations that he was not paid overtime for commute time and some meetings *that he did not report* as hours worked, does not support his claim that he is entitled to overtime wages.[2] Similarly, plaintiff's vague allegations that he was not paid overtime for work hours that he did not turn in to defendant but instead wrote down on scraps of paper is insufficient to support his claim. Plaintiff has not produced evidence sufficient to establish either that defendant knew or should have known that he was performing overtime work without compensation.

Moreover, plaintiff failed to comply with defendant's written policies that employees are responsible for accurately recording and reporting all time worked and that employees who believe there is an error in their pay should contact the corporate payroll office immediately. "Under the FLSA, if an employer establishes a reasonable process for an employee to report uncompensated work time the employer is not liable for non-payment if the employee fails to follow the established process. When the employee fails

---

[2] Plaintiff does not make a claim for failure to pay wages for this alleged time, but rather, a claim for failure to pay overtime wages for the time. Accordingly, plaintiff would first have to prove he worked forty hours or more in each week that he claims he was not paid overtime for these previously unclaimed work hours.

to follow reasonable time reporting procedures [he] prevents the employer from knowing its obligation to compensate the employee and thwarts the employer's ability to comply with the FLSA." *White v. Baptist Memorial Health Care Corp.*, 699 F.3d 869, 876 (6th Cir. 2012) (citing, inter alia, *Hertz*, 566 F.3d at 781–82). It is undisputed that plaintiff did not submit the overtime hours to defendant that he claims in this action. In fact, plaintiff did not pursue any official written action regarding any of his alleged "disputes" regarding his pay that he claims he conveyed to "Sally" in human resources and various supervisors. Further, the undisputed evidence before this Court is that plaintiff was properly compensated for all overtime he reported. As a result, plaintiff's claim fails and defendant is entitled to judgment as a matter of law on this claim.

### 4. FLSA Retaliatory Discharge

Plaintiff alleges that his employment was terminated in retaliation for his complaints to his supervisors that he was not paid overtime hours. He contends that his discharge was in violation of 29 U.S.C. § 215 (a)(3) of the FLSA.

Section 215(a)(3) of the FLSA makes it unlawful "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint ... under or related to this chapter." 29 U.S.C. § 215(a)(3). The familiar *McDonnell Douglas Corp v. Green*, 411 U.S. 792 (1973) burden-shifting framework is applied to plaintiff's FLSA retaliatory discharge claim. "To establish a prima facie case of retaliation, appellant had to show that he participated in statutorily protected activity, that appellees took an adverse employment action against him, and that there was a causal connection between them." *Grey v. City of Oak Grove, Mo.*, 396 F.3d 1031, 1034-

35 (8th Cir. 2005). "The Eighth Circuit decisions interpreting § 215(a)(3) make clear that the employee must engage in *protected activity* in order to be shielded from retaliation." *Bartis v. John Bommarito Oldsmobile-Cadillac, Inc.*, 626 F.Supp.2d 994, 999 (E.D. Mo. 2009) (citing *Grey,* 396 F.3d at 1034–35). "The 'protected activities' are listed explicitly in the statute: filing a complaint, instituting or testifying in a proceeding, or serving on a committee." *Id.* "Workplace complaints are not included." *Id.* "Raising informal objections with one's supervisor is not included." Although there is room for broad interpretation, the statute cannot be construed so broadly as to depart from its plain and clear language." *Id.*

According to plaintiff's own testimony, he did nothing more than verbally complain to "Sally" in HR and to his supervisors that his overtime was calculated improperly. Plaintiff did not file a complaint with regard to his allegations that his overtime was not properly paid. Plaintiff did not, therefore, engage in a protected activity under the FLSA. For these reasons, plaintiff's claim for unlawful retaliation under the FLSA fails as a matter of law. Defendant is entitled to judgment as a matter of law on this claim.

### 5.    **Wrongful Discharge in Violation of Public Policy**

Plaintiff makes a state law claim for wrongful discharge in violation of public policy based on the same allegations he offered in support of the FLSA retaliatory discharge claim. Again, in his complaint, he alleges that his employment was terminated in retaliation for his complaints to his supervisors that he was not paid overtime hours.

Further, he alleges that the failure to pay overtime was a violation of state and federal law.

For at-will employees in Missouri, a common law wrongful discharge claim is considered the "public-policy exception to the at-will employment doctrine." *Fleshner v. Pepose Vision Institute, P.C.,* 304 S.W.3d 81, 92 (Mo. banc 2010). Generally, an at-will employee may be discharged at any time, with or without cause. *Id.* Under the public policy exception, however, an at-will employee may not be terminated "(1) for refusing to violate the law or any well-established and clear mandate of public policy as expressed in the constitution, statutes, regulations promulgated pursuant to statute, or rules created by a governmental body or (2) for reporting wrongdoing or violations of law to superiors or public authorities." *Id.* When an employee is terminated under either of these circumstances, Missouri courts have held that he has a cause of action in tort for wrongful discharge based on the public-policy exception. *Fleshner,* 304 S.W.3d at 92. The second theory of wrongful discharge is commonly referred to as "whistleblowing." *Margiotta v. Christian Hosp. Northeast Northwest*, 315 S.W.3d 342, 346 (Mo. banc 2010). To prevail on such a claim, plaintiff must show that he "reported to superiors or to public authorities *serious* misconduct that constitutes a violation of the law and of ... *well established* and *clearly mandated* public policy." *Id.*; *Frevert v. Ford Motor Co.,* 614 F.3d 466, 471 (8th Cir. 2010).

Plaintiff cannot establish a claim for wrongful discharge because he does not allege he was terminated for refusing to perform an illegal act and there is no evidence that he was terminated for reporting wrongdoing or violations of law to superiors or third

22

parties.[3]  The undisputed evidence shows that plaintiff did nothing more than verbally complain to "Sally" in HR and to his supervisors that his overtime was calculated improperly.  Plaintiff admits that "Sally" checked into his complaints and responded that defendant was paying him correctly.  In his deposition, plaintiff stated that he disagrees with defendant's method of calculating overtime.  During the pendency of this case, after defendant's counsel explained to plaintiff's then counsel the method defendant used to calculate overtime, plaintiff's counsel conceded that it complied with the FLSA.  There is no evidence before this Court that plaintiff complained to his supervisors or to public authorities serious misconduct by defendant that constitutes a violation of the law and of well-established and clearly mandated public policy.  Further, there is no evidence that plaintiff was terminated for any reason other than the eight disciplinary notices that he received within a one year time period.  Plaintiff's claim for wrongful discharge in violation of public policy fails as a matter of law.  Defendant is entitled to judgment as a matter of law on this claim.

## V.    Conclusion

Although plaintiff failed to respond to the motion for summary judgment, his deposition testimony was before the Court on this motion.  Based on the undisputed facts, and review of the entire record before this Court, plaintiff's claims fail as a matter of law

---

[3] The parties did not raise, and the Court finds it unnecessary to address, the issue of whether plaintiff's wrongful discharge claim would be preempted by the MHRA.  For a discussion of this issue, see *Noel v. AT&T Corp.*, 936 F.Supp.2d 1084, 1089-90 (E.D. Mo. 2013) and *Shelton v. Village of Bel Nor*, 2011 WL 3207123, at *3 (E.D. Mo. July 28, 2011).

for the reasons stated herein and, therefore, defendant is entitled to judgment as a matter of law in its favor on all claims.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion for summary judgment (ECF #42) is **GRANTED**. A separate judgment shall accompany this Memorandum and Order.

Dated this 18th day of February, 2015.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE